FILED

10/10/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2019

**IN RE OMARI T.**

**Appeal from the Juvenile Court for Montgomery County**
**No. 17-JV-1085     Timothy K. Barnes, Judge**

_____

**No. M2018-02227-COA-R3-JV**
_____

This appeal results from a custody action. A Missouri court issued an initial custody decision providing Cherita L. ("Mother") with primary custody of Omari T. ("the Child"). Both parents and the Child later moved out of that state. Both Mother and the Child relocated to Tennessee. The father, Otis T. ("Father"), resided in Tennessee for a time but more recently had been living and working in Germany. In response to a petition to domesticate the foreign decree and modify custody, the Juvenile Court for Montgomery County ("Juvenile Court") subsequently entered in July 2017 an "agreed order" reflecting that the parties resided in Tennessee and approving an agreed parenting plan designating Father as the primary residential parent of the child. The agreed order was signed only by the Juvenile Court Judge and Father's counsel. Mother's signature was not included on the agreed order nor was a certificate of service included showing that the order was provided to Mother. Approximately a year later, Father filed a contempt petition when Mother refused to return the Child to Father's custody. In response, Mother filed a motion to set aside the agreed order modifying custody, pursuant to Tennessee Rule of Civil Procedure 60.02(3), (4), and (5). The Juvenile Court denied Mother's Rule 60.02 motion and determined that Mother had violated the Juvenile Court's July 2017 order and held Mother in contempt. We hold that the Juvenile Court's July 2017 order had no effective entry date pursuant to Tennessee Rule of Civil Procedure 58, and Mother, therefore, could not have been in contempt of that order. We affirm the Juvenile Court's order transferring venue to Shelby County, and we vacate the July 2017 order and all other subsequent orders by the Juvenile Court concerning Father's contempt petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed, in Part, and Vacated, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

James Sanders, Memphis, Tennessee, for the appellant, Cherita L.

Jacob P. Mathis, Clarksville, Tennessee, for the appellee, Otis T.

## OPINION

### Background

In 2011, Father and Mother lived in Missouri. The parties had one child, the Child, during their relationship. In January 2011, the 19th Judicial Circuit Court of Cole County, Missouri ("Missouri Court") entered an order regarding custody and child support. The Missouri Court ordered that the parents would have joint legal and physical custody of the Child. Mother was to have primary physical custody of the Child during the school year. Father was to have exclusive physical custody of the Child for ten weeks each summer, beginning on June 1st and ending on August 1st. The Juvenile Court ordered, in pertinent part, that Father was to pay to Mother $484 per month in child support for the Child and provide health insurance for the Child.

In their appellate briefs, both parties agree that Mother and the Child left Missouri in 2012 and relocated to Memphis, Tennessee. Father states in his brief that he had been living in Clarksville, Tennessee for more than six months as of June 2014. The record is unclear as to exactly when Father left Missouri.

Father filed a petition to modify child support in the Juvenile Court in June 2014. A hearing was scheduled before the Juvenile Court in October 2014. However, the Juvenile Court entered an agreed order in September 2014, modifying Father's child support obligation to $322 per month. Father's attorney and Mother, as a pro se litigant, signed the agreed order.

It is undisputed that none of the parties lived in Missouri in July 2017. At the time, Father was living in Germany, and Mother was living in Memphis, Tennessee. On July 25, 2017, Father filed a petition in the Juvenile Court to domesticate the foreign decree from the Missouri Court and to modify custody. The Child was eight years old at that time. Also on July 25, 2017, the Juvenile Court entered an agreed order, which began: "Comes now the parties, as evidenced by their signatures on the attached Parenting Plan, and would agree as follows . . . ." The order identified Father as residing in Clarksville, Tennessee and Mother residing in Memphis, Tennessee. The agreed order stated that the parties agreed that a material change in circumstances had occurred since

entry of the Missouri Court's custody order, that it was in the Child's best interest for Father to be designated as primary residential parent, that the parties had entered into a permanent parenting plan reflecting the parties' agreement, and that the agreed parenting plan is in the Child's best interest. Based on the apparent agreement of the parties as reflected in the order, the Juvenile Court approved the parties' agreed parenting plan modification. The agreed order was signed by the Juvenile Court Judge and Father's attorney. The agreed order was not signed by the parties and did not include a certificate of service.

The attached parenting plan order is specified as "Agreed" and lists the State of Tennessee and the Montgomery County Juvenile Court at the top of the document. The plan states that it modifies an existing order dated January 2011. In this new plan, Father is designated as the primary residential parent with 285 days to Father and 80 days to Mother. The plan also states that Mother will have the Child each year from June 1st to August 1st. As to child support, the parenting plan states that neither parent will pay child support to the other due to the substantial transportation costs that will accompany the Child residing overseas with Father.[1] Mother signed the parenting plan on July 19, 2017. Father did not sign the permanent parenting plan, but his attorney signed it. The Juvenile Court Judge signed the permanent parenting plan on July 25, 2017, the same day the agreed order was entered.

In August 2018, Father filed a petition for contempt by Mother as to the July 2017 order and requested immediate return of the Child to his custody. According to Father's petition, Mother had refused to allow the Child to speak with Father by telephone or video chat. Father further stated that he had attempted to call the Child eleven times in June 2018, twelve times in July 2018, and five times so far in August 2018. Father's petition stated that Mother only allowed Father to speak with the Child three times throughout the summer. Father alleged that Mother was supposed to return the Child to Father on August 1, 2018, but she had not placed the Child on his return flight back to Father in Germany and had refused to return him to Father. According to Father, the Child was missing school. Because Mother had refused to return the Child to Father per the permanent parenting plan, Father requested that Mother be held in willful contempt of court and sentenced to ten days in jail. As a consequence of Father's petition, the Juvenile Court entered an ex parte order and attachment ordering the return of the Child to Father's custody immediately. The Juvenile Court also ordered that Mother return the Child's passport to Father.

---

[1] Father's attorney stated at oral arguments before the Juvenile Court that Father had already relocated overseas when the permanent parenting plan was modified.

Mother filed several pleadings in September 2018 requesting to suspend operation of the Juvenile Court's July 2017 agreed order modifying custody, pending a final hearing in the matter; a limited appearance for purposes of contesting jurisdiction and venue; and to set aside the agreed order pursuant to Tennessee Rule of Civil Procedure 60.02(3), (4), and (5), due to lack of jurisdiction, improper venue, and fraud.[2] As to jurisdiction, Mother contended in her pleadings that the July 2017 order should be set aside because the Missouri Court had continuing jurisdiction over the matter; the Missouri Court had not relinquished its original, continuing jurisdiction; and the Juvenile Court's July 2017 agreed order is void. Mother further alleged that the order was void because despite the agreed order stating that the agreement was "evidenced by [the parties'] signatures on the attached Parenting Plan," both parties' signatures were not included on the plan. Specifically, the permanent parenting plan does not include Father's signature, although Father's counsel signed the plan. Mother therefore argued the agreed order should be set aside.

Regarding venue, Mother argued that she had "never set foot in Montgomery County, Tennessee" and that all witnesses in this matter are located in Shelby County, Tennessee, which renders Montgomery County an inconvenient forum for this matter. Mother further argued that Father did not actually live in Clarksville in July 2017 despite using that address in the Juvenile Court's order. As such, Mother contends that Shelby County is a more appropriate venue. Concerning Mother's allegations of fraud, she averred that she had never entered into an agreed parenting plan that gave her only 80 days of parenting time and that she had allowed Father to have extended parenting time with the Child from August 18, 2017, through June 19, 2018. Mother claimed that Father "executed a fraud on [Mother] by inducing [her] to execute her signature on a different Permanent Parenting Plan and after procuring her signature, [Father] changed the terms contained within the Permanent Parenting Plan signed by [Mother]." As such, Mother contended the July 2017 order should be set aside.

Attached to her pleadings, Mother included an affidavit stating, in pertinent part, that she only became aware of the July 2017 agreed order in August 2018 and that she had no prior knowledge of the action being commenced in Montgomery County, Tennessee. According to Mother's affidavit, the permanent parenting plan she signed was significantly different from the plan attached to the agreed order. Mother also

---

[2] Tennessee Rule of Civil Procedure 60.02 provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

included an affidavit from an attorney, Gail G. Washington. In her affidavit, Ms. Washington stated, in relevant part, that Mother had provided her with documentation she received from Father for Ms. Washington's review. Although Ms. Washington could not recall the details of the document, she stated that she had concluded that it was not in Mother's best interest and warned Mother not to sign the document. Ms. Washington further provided that more than a year before her affidavit, which was executed in September 2018, Mother had informed her that she had entered into what Mother called a "'short simple agreement'" that allowed the Child to spend time with Father in Germany for a year and then the Child would return to Mother.

Mother also filed a motion "by special appearance" requesting, *inter alia*, that the Juvenile Court allow Mother to participate in the hearing telephonically to contest jurisdiction and venue. The Juvenile Court entered an order on September 26, 2018, in response to Mother's motion and granted her motion to appear via telephone for the hearing. However, the Juvenile Court ruled that Mother could proceed on her pending motions only if the Child was physically present in court.

Father later filed an ex parte motion, declaring that he now had physical custody of the Child but that Mother would not provide him with the Child's passport, preventing Father and the Child from returning to Germany. Father requested in his motion that the Juvenile Court allow Father to obtain a passport for the Child. The Juvenile Court entered an ex parte order granting Father's request to obtain a passport for the Child.

The Juvenile Court conducted a hearing in October 2018 regarding Father's contempt petition and Mother's responsive pleadings. During this hearing, the Juvenile Court heard oral arguments of counsel and announced its ruling as follows:

> I heard the proof. Frankly, I do not find it credible that these are not her signatures. They certainly appear to be her signatures. I do not find any evidence that would support anyone forging her signature. As a matter of fact, one of them is notarized. That's what a notary does. They make you prove who you are. And that was the one dated July 19, 2017. The Court does not find any grounds to set aside the orders of this Court.

> And I'm going to tell you, this Court went through a lot of effort to get this child back and enforce the Court's orders. Court's order[s] are not to be flouted. I can bring out somebody I threw in jail yesterday to tell you this Court will not put up with orders being flouted.

> * * *

> What I'm interested in is what this Court ordered.

- 5 -

* * *

And this Court properly ordered that this Court had jurisdiction. Your jurisdiction was established when they submitted to this jurisdiction and the petition to modify child support, mother having signed the agreed order. This Court had jurisdiction. That was a valid court order. The mother has violated that valid court order.

Even if I were to subsequently set it aside, there would be questions as to whether or not she would still be in contempt, but I will transfer the venue to Shelby County.

But on the contempt, I'm not going to throw you in jail today, young lady, but I want you to understand the importance of abiding by a Court's orders. I am going to award attorney fees.

The Juvenile Court therefore entered an order on November 13, 2018, declining to set aside the prior orders of the Court and finding that Mother had violated the Juvenile Court's prior order. The Juvenile Court transferred venue to Shelby County, Tennessee for all future proceedings. Additionally, the Juvenile Court awarded Father an award of attorney's fees in the amount of $2,830. Mother timely appealed.

**Discussion**

Although not stated exactly as such, Mother raises the following issues for our review: (1) whether the Juvenile Court had jurisdiction to modify custody without first domesticating the foreign decree; (2) whether the Juvenile Court had jurisdiction upon the filing of Father's petition when the foreign decree was not domesticated, Mother was not served with the petition, and the matter was not adjudicated by the Juvenile Court; (3) whether the Juvenile Court violated Mother's due process rights by requiring Mother to have the Child present in court before it would consider Mother's jurisdictional motions; (4) whether the Juvenile Court erred by entering the July 2017 agreed order when neither the agreed order or the attached agreed permanent parenting plan contained both parties' signatures; (5) whether the Juvenile Court violated Mother's due process rights in granting Father's petition for criminal contempt against Mother; and (6) whether the Juvenile Court's order of attachment was invalid and statutorily deficient such that it should be set aside for failure to comply with statutory requirements. Neither party raises an issue as to the Juvenile Court's transferring the case to Shelby County.

Although Mother does not cite to Tennessee Rule of Civil Procedure 58, she raises an issue, among others, with the Juvenile Court's agreed order that it lacked the

signatures of both parties. Although we do not agree with Mother that the Juvenile Court's July 2017 agreed order is void based on the lack of signatures, we do find that the order did not comply with Rule 58 and, therefore, has no effective date of entry. Tennessee Rule of Civil Procedure 58 provides in pertinent part:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
>
> (1) the signatures of the judge and all parties or counsel, or
>
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
>
> (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

Our Supreme Court has explained regarding Tennessee Rule of Civil Procedure 58:

> The purpose of Rule 58 "is to insure that a party is aware of the existence of a final, appealable judgment in a lawsuit in which he is involved." *DeLong v. Vanderbilt Univ.,* 186 S.W.3d 506, 510 (Tenn. Ct. App. 2005), *app. perm. appeal denied* (Tenn. Dec. 19, 2005); *see* Tenn. R. Civ. P. 58, advisory comm'n cmt. (stating that Rule 58 "is designed to make uniform across the State the procedure for the entry of judgment and to make certain the effective date of the judgment"). The failure to adhere to the requirements set forth in Rule 58 prevents a court's order or judgment from becoming effective. *DeLong,* 186 S.W.3d at 509. Under certain circumstances however, remedies are available to effectuate a defective order or judgment.

*Blackburn v. Blackburn*, 270 S.W.3d 42, 49 (Tenn. 2008).

This Court has held that compliance with Tennessee Rule of Civil Procedure 58 is mandatory. *See McCurry Expeditions, LLC v. Roberts*, 461 S.W.3d 912, 916 n.2 (Tenn. Ct. App. 2014) (quoting *Steppach v. Thomas*, No. W2008-02549-COA-R3-CV, 2009 WL 3832724, at *4 (Tenn. Ct. App. Nov. 17, 2009) (other internal citations omitted). Although a failure to comply with Rule 58 "prevents a court's order or judgment from becoming effective" and impedes the finality and appealability of the judgment, it does not invalidate the court's judgment. *State ex rel. Cartwright v. Holloway*, No. M2009-00928-COA-R3-JV, 2010 WL 199409, at *2 (Tenn. Ct. App. Jan. 20, 2010); *Clark v.*

*Wayne Med. Ctr.*, No. M2005-00699-COA-R3-CV, 2007 WL 1585166, at *4 (Tenn. Ct. App. May 31, 2007) ("[T]he remedy for a failure to comply with Tenn. R. Civ. P. 58 is not an invalidation of the judgment but rather a Rule 60 motion.").

The July 2017 agreed order contained only the signatures of the Juvenile Court Judge and Father's counsel. Although Mother apparently signed the agreed permanent parenting plan, she did not sign the agreed order that adopted the plan. The agreed order also did not include a certificate of service to Mother. Mother had signed the permanent parenting plan six days prior to entry of the agreed order. There is no evidence demonstrating that Mother ever received a copy of the agreed order or that she was present during the hearing when the agreed order was entered. Based on the foregoing, we conclude that the July 2017 order did not comply with Tennessee Rule of Civil Procedure 58, and therefore, had no effective date.

Because the July 2017 agreed order did not comply with Rule 58, it has no effective date of entry and is not a final judgment. *See Wallace v. City of Lewisburg*, No. M2018-01572-COA-R3-CV, 2019 WL 2184981, at *3 (Tenn. Ct. App. May 21, 2019). Thus, the July 2017 order cannot be relied upon in Husband's subsequent contempt action. *See McCurry Expeditions, LLC*, 461 S.W.3d at 916 n.2 ("[A]n order that does not comply with Rule 58 'is not a final judgment and is ineffective as the basis for any action for which a final judgment is a condition precedent.'" (quoting *Steppach*, 2009 WL 3832724, at *4; *Citizens Bank of Blount County v. Myers,* No. 03A01-9111-CH-422, 1992 WL 60883, at *3 (Tenn. Ct. App. Mar. 30, 1992))).

Except for the Juvenile Court's order transferring the case to Shelby County, we vacate the July 2017 order and all other subsequent orders relevant to Father's contempt action. Because there is no final order regarding Father's custody petition properly entered and we have vacated the Juvenile Court's orders relevant to Father's contempt petition and affirmed the Juvenile Court's order transferring venue to Shelby County, Mother's remaining issues on appeal are pretermitted as moot. On remand and after transfer to an appropriate Shelby County Court, Mother and Father can file any such motions she or he may deem necessary to address any issues in the custody proceeding related to Father's petition to domesticate a foreign decree and to modify custody of the Child. *See Wallace,* 2019 WL 2184981, at *3.

## Conclusion

We hold that the Juvenile Court's July 2017 agreed order has no effective date of entry and cannot be relied upon as a basis for Father's contempt action. We vacate the July 2017 order and all other subsequent orders related to Father's contempt action. We affirm the Juvenile Court's order transferring venue to Shelby County. This cause is remanded to the Juvenile Court to enter an order transferring venue to an appropriate

court in Shelby County, Tennessee and maintaining the status quo until the transfer is effective. The costs on appeal are assessed against the appellee, Otis T., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE